MAY TERM
1836.

McLean admr. of
Brockman
v.
Thorp.

———◆·☀·◆———

### McLean Admr. of Brockman v. Thorp

1   A dedimus directed to a judge or justice of another state, and authorising him to cause to come before him "such persons as shall be named *by the pllf.* his agent or atty." is not pursuant to the provisions of the statute, and should pe quashed on motion.

2.   Under the provisions of the statute regulating the interest of money, allowing creditors six per cent per annum, in cases where money has been "withheld by an unreasonable and vexatious delay of payment," it is for the jury to determine whether the money has been unreasonably and vexatiously delayed, and it is error, if the court instruct the jury "to allow interest at the rate of six per cent per annum from the time they believed the def. received the money of the plff."

3.   Construction of the statute of limitations.

4.   It is not sufficient to take the case out of the statute for a pltf. to prove by a witness, that in a conversation between def. and witness, relating to the subject matter of the controversy, within five years before the commencement of the suit, def. informed the witness "that he must have some money or pltf. would sue him."

5.   Nor would an acknowledgement by def. that pltf. had not received the amount of his demand, be such an acknowledgement as would imply a new promise to pay on the part of def. which is necessary to take the case out of the statute.

ON appeal from the Randolph circuit court.

Wash J. delivered the opinion of the court.

Thorp the appellee sued Brockman the intestate, in the Randolph circuit court, in an action of assumpsit, for money had and received. The defendant pleaded non assumpsit, and the statute of limitations. Pending the suit in the circuit court, Brockman died, and the suit was revived against McLean his administrator. At the trial in the circuit court, the plaintiff below, got judgment, from which McLean appealed to this court; and at the September term 1833, the judgment of the circuit court was reversed and the cause remanded for a new trial.— Upon the second trial, Thorp again got judgment, to reverse which McLean has come again with his appeal to this court.

From some inadvertence of the plaintiff or of the circuit court, or some misconception of the opinion of this court, delivered at the September term 1833, the record presents now the very point upon which mainly it was then reversed and remanded. It might suffice, therefore, to refer to the former decision; but many other important questions are fairly raised, and have been ably argued;— some of which are essential to the rights and future government of the parties in this suit, and should therefore be settled. Such and such only, we will endeavor to notice briefly, without attending at all, to the order in which they have been raised.

MAY TERM
1836.

McLean admr. of
Brockman
v.
Thorp.

1st. A motion was made by the defendant's counsel in the circuit court, when the cause was called for trial to quash the dedimus under which certain depositions of the plaintiff had been taken in the State of Kentucky.— An act to provide for the taking of depositions in civil cases (Rev. Code p. 323) authorises "the court in which the action is pending, or the clerk thereof in vacation, on the application of the party wishing to use the testimony of a witness residing out of the State, to award and issue a commission under the seal of the court to any judge or justice of the peace, of any state, territory, kingdom or empire, authorising him to cause to come before him such person or persons, as shall be named by *either party* his attorney or agent" &c. The commission or dedimus in this case was directed to any judge or justice of the peace, for the county of Clark, in the State of Kentucky &c., authorising such judge or justice, "to cause to come before him such person or persons as shall be named *by the plaintiff*, his agent or attorney" &c.— Depositions are the creatures of the statute and must come in the form and mode prescribed. It is no answer to say that both parties may take their commissions, or that it does not appear that the defendant wished to examine any witness under the dedimus issued for the plaintiff. The dedimus was not such as the law prescribes, and conferred no authority. The motion to quash was therefore, improperly overruled.

A dedimus directed to a judge or justice of another State, and authorizing him to cause to come before him "such persons as shall be named *by the pltf.* his agent or atty." is not pursuant to the provisions of the statute, and should be quashed on motion.

The next question we will consider grows out of the instructions by the court to the jury, "to allow interest at the rate of six per centum per annum, from the time they believed the defendant received the money of the plaintiff."

The defendant acting as agent and trustee for certain of the children and grand children of Joseph Embree deceased, under a deed of gift, executed by said Embree in 1818,

sold and disposed of certain property for the benefit of Embree's children and grand children. The property was sold in 1818 or 1819—on a credit of 9 and 12 months. When the monies arising from the sales of this property came to the defendants hands, and how or by whom the collections were made, does not appear. The plaintiff, in the year 1818, intermarried with the grand daughter of Joseph Embree, and in right of his wife, claims the portion coming to her from the property sold by the defendant. The defendant and Joseph Embree both resided in Clark county, in the State of Kentucky, when the deed was made by Embree and the property sold by Brockman, and Brockman continued to reside there until 1827, when he removed to Missouri, where in 1831, the plaintiff instituted this action to recover his wife's portion —no demand was proved prior to the institution of the suit, and it was insisted at the trial below, and is now argued in this court, that if the defendant is liable at all, he is bound to pay interest only from the institution of the suit, or at most, only from the time the new promise or acknowledgement was made &c.

Under the provisions of the statute regulating the interest of money, allowing creditors six per cent per annum, in cases where money has been "withheld by an unreasonable and vexatious delay of payment," it is for the jury to determine whether the money has been unreasonably and vexatiously delayed, and it is error, if the court instruct the jury "to allow interest at the rate of six per cent per annum, from the time they believed the def. received the money of the pltf."

The statute regulating the interest of money, provides that creditors shall be allowed to receive interest at the rate of six per cent. per anm. in certain specified cases and amongst others enumerated, are the cases in which "money has been received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment."— It is conceded that this last case is the one under which the plaintiff must recover interest, if at all. The counsel for the appellant insists, that under this provision of the statute, it is for the jury to determine whether the money has been unreasonably and vexatiously withheld, and that the circuit court erred in concluding the jury by the instruction given to allow interest from the time they believe the defendant received the plaintiff's money &c. We think this objection valid and that the court erred. The money having come to the hands of the defendant as an agent or trustee for the plaintiff's wife, he was not even liable to an action before demand made. We think too, that if the money had been received by the defendant, not as agent or trustee, it was still the province of the jury to determine from all the circumstances, whether the payment of it had been unreasonably and vexatiously delayed.

The third and last point, we shall attempt to dispose of at present, is one of much difficulty, and on which we are not all entirely agreed.

It is insisted by the counsel for the appellee; that the proof in the cause was sufficient to take the case out of the statute of limitations, and that the circuit court decided correctly in refusing to grant a new trial, and in refusing to give the instructions prayed by the defendant on this point.

MAY TERM
1836.

McLean admr. of
Brockman
v.
Thorp.

The 16th instruction prayed for is, "that the plaintiff cannot recover, without proving an express promise to pay on the part of said Brockman, within five years next, before the commencement of this suit." The substance of some three or four other instructions asked and refused, is that "there is no sufficient evidence before the jury to take the case out of the statute of limitations." The general doctrine on this subject in the English courts, has vibrated from one extreme to the other, and we shall not attempt to reconcile or examine the various decisions.— After having virtually repealed the statute by extending its construction, they are becoming of late years, fully sensible of their errors, and are now strugling to get back to a more reasonably strict construction.

No express adjudication has yet been made upon our statute, which in this respect is precisely like the English statute 21st James, 2nd, which has been adopted in Kentucky and most of the other States; and this court is left free to settle the doctrine.

After the fullest investigation and best deliberation we have been able to give the subject, we feel inclined to take the doctrine as laid down in the cases of Harrison and Handby—1 Bibb 443—Bell v. Rowlands Admrs.— Hardin's Reports 301, 1st Bibb 334, 2. Bibb 284, and 3. Bibb 271;—and as laid down by the Supreme Court of the U. S. in the cases of Bell and Morrison—1. Peter's R. 351, and Wetzell v. Bussord—11 Wheaton's Rep. 309, and Clementson v. Williams—8 Cranch, 73.

The principles to be extracted from these decisions, and which this court is inclined to establish in the construction of this statute, are:

Construction of the statute of limitations.

"That the statute was intended as a 'statute of repose, and is a wise and beneficial law, not designed merely to raise a presumption of payment of a just debt, from lapse of time; but to afford security against stale demands after the true state of the transaction may have been forgotten, or be incapable of explanation by reason of death or removal of witnesses."

That an acknowledgment of a debt, which will take a case out of the statute, must be unqualified and unconditional.

McLean admr. of
Brockman
v.
Thorp.

That the acknowledgment must go to the fact that the debt is still due; and an acknowledgment of the original justice of the claim, is not sufficient to take the case out of the statute of limitations.

That if the bar of the statute is sought to be removed by the proof of a new promise, that promise as a new cause of action, ought to be proved in a clear and explicit manner, and be in its terms unequivocal and determinate.

If there be no express promise, but a promise is to be raised by implication of law, from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a present subsisting debt, which the party is liable and willing to pay."

These are some of the principles to be extracted from the cases cited, which we feel prepared to adopt and apply to the case before us.

The decision of the first point, made in this case in accordance with the view we have taken of it, would have excluded the depositions upon which the plaintiff mainly relies to take this case out of the statute, but we will look to them as if rightly read in the case, and see how far they satisfy the requisitions of the law we have laid down as the foundation, so far as the principles apply; upon which the statute is to be construed.

It appears from the deposition of one of the witnesses, (David Hampton) that in the latter part of the year 1829, or the first part of the year 1830, Stephen Brockman informed the witness that "he must have some money or Thorp would sue him." Upon a subsequent examination of the same witness, he states, "Stephen Brockman never left any money to pay John Thorp with (him) the deponent in the year 1829 or 1830, and applied to the witness to get money, and said that he (Brockman) must get money before he returned to Missour, for if he did not pay John Thorp, when he returned home Thorp would sue him."

It is also shewn that this conversation was in relation to the money arising from the sale of Embree's property and to Thorp's interest in right of his wife.

Another witness stated, that in the winter of 1829 or spring of 1830, said Brockman stated to the witness that he thought there was about four or five hundred dollars coming to him (Brockman) from David Hampton, and that said Thorp had not received his part of estate as (witness) understood him. Upon a subsequent examination the same witness stated that he had a conversation with the

*Margin notes:*

It is not sufficient to take the case out of the statute, for a pltf. to prove by a witness, that in a conversation between def. and witness, relating to the subject matter of the controversy, within five years before the commencement of the suit, def. informed the witness "that he must have some money or plaintiff would sue him."

Nor would an acknowledgement by def. that pltf. had not received the amt. of his demand, be such an

McLean admr. of
Brockman
v.
Thorp.

deceased Stephen Brockman in the fall of the year 1829, or in the spring of 1830, in which conversation said Brockman informed him (the witness) that the said John Thorp had not received his proportion of the money arising from the two sales as above stated; which amount was $258, 89¾, or there abouts, or this deponent understood.

It was proved by one witness that in the year 1821 or 1822, Brockman admitted that he had made sale of the property given by Embree to him in trust for his children and grand children, and that he was willing and ready to pay Thorp his wife's portion in notes of the bank of the commonwealth of Kentucky, and unless he would receive that paper he would keep him out of it for five years &c. One other witness stated "that Brockman in the year 1827, in Howard county in this State, in a conversation with witness about Thorp's proportion of the proceeds of the sales of said property, said that Thorp's money was with David Hampton in Kentucky, and that it he wanted it he could get it." To one other witness he stated about the same thing.

David Hampton in answer to the interrogatories put to him by Brockman, (i. e.) "did you not tell me sitting on a log in your plantation, that you had Thorp's money ready for him, and that nobody but Thorp or his agent should have it? And have you not now said Thorp's money? And did you not tell me so when I informed you that Thorp was about to sue me for the money?" states, "as to the money of the sale coming to Thorp and wife for the proceeds of the first sale effected by Stephen Brockman, if he Brockman, did not collect it, I never did; but believe that Brockman made the collection of all the proceeds of said sale, except that part I received as trustee as afforesaid. I have no recollection of sitting on a log with Stephen Brockman, but always intended paying Thorp his proportion of the sales made by me as administrator of Joseph Embree after his decease, and his proportion of the sales of the land above alluded to."

It was in proof that David Hampton was the administrator of the estate of Joseph Embree deceased, and the guardian and trustee for several of the children and grand children, and for the brother and sister of the plaintiff's wife; and that he sold and disposed of the lands &c. part of the personal property belonging to said estate, and united with Brockman in some of the sales made by him; and aided Brockman in the collection of the monies arising from the sales made by him; and collected and paid

acknowledgement as would imply a new promise to pay on the part of def. which is necessary to take the cause out of the statute.

34

the portions coming to the brother and sister of the plaintiff's wife; that Brockman remained in Clark county in the State of Kentucky, where he resided at the time of the sale of the property, until the year of 1827, when he removed to Missouri. That both before and after his removal from Kentucky and on all occasions, so far as detailed by the witnesses, (except that stated by Hampton and that stated by a witness in the year 1821, or 1822,) Brockman stated to various members of the family who have deposed in the cause, that Thorp's money was in Hampton's hands, and that Thorp could get it at any time; or must apply to Hampton if he wanted to get it &c.

No sort of reason or excuse is given or attempted to be given for the delay on the part of the plaintiff, but on the contrary, a case is shewn in which most men of ordinary prudence would have taken prompt measures to fix the liability of the defendant, or to get the money from Hampton.

The original justice of the claim is clearly established; but how and from what are we to establish an acknowledgment of present liability from which the law will raise a promise? No express promise is pretended—no willingness to pay since about the year 1821 or 1822, manifested at any time by the defendant. It is true that Hampton says the defendant applied to him to get money, and said if he did not get it, Thorp would sue him on his return to Missouri. But Hampton's answers to Brockman's interorgatories on this head, are altogether evasive and unsatisfactory, and leave it to be fairly inferred that the money was in Hampton's hands, who was interested of course in having it collected off of Brockman. Brockman's apprehension (as expressed to Hampton) that Thorp would sue him if he returned to Missouri without money, might have been well expressed to urge Hampton to pay over to him what he had uniformly stated Hampton held in his hands, and which it may be reasonably concluded Hampton had collected whilst aiding or pretending to aid Brockman in his collections; or it might have related to some other debt or claim;—or Brockman might well have dreaded the institution of a suit by Thorp without feeling or being in fact liable to pay the debt. In applying the facts of this case to the principles we have laid down (as extracted from the ablest decisions on this point) they fall far short of establishing that clear, precise and unconditional acknowledgment required in order to raise or imply a new promise to pay

on the part of Brockman, which is necessary to take the case out of the statute.

Upon these matters therefore; and without noticing the many other points in the cause, the judgment of the circuit court is reversed.

McGIRK Judge.—

As to the last point, I do not concur with the majority of the court; as to the other point relating to interest, I think the opinion is right.